Courtney Paden
1529 Florida Avenue
Richmond, CA 94804
ms.paden@hotmail.com
510-932-2265

E-filing

FILED
JUL 3 1 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT COURT
DISTRICT OF CALIFORNIA
OAKLAND

IFP

NP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ADR

| | | |
|---|---|---|
| Paden, Courtney | **Plaintiff,** | ) |
| vs. | | ) CASE NO. **C08-03673** MC |
| Family   Service Agency of | | ) **EMPLOYMENT DISCRIMINATION** |
| San Francisco | **Defendant** | ) **COMPLAINT** |

**DEMAND FOR JURY TRIAL**

*JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT*

1.      Jurisdiction. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is conferred on the Court by 42 U.S.C. Section 2000e-5.

2.      Venue. As the unlawful employment practices complained of herein occurred within the City and County of San Francisco, California, venue is appropriate to file within the Northern District of California.

3.      Intradistrict Assignment. This lawsuit should be assigned to the San Francisco Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred within the City and County of San Francisco pursuant to Civil Local Rule 3-4 (b).

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

- 1 -

*PARTIES*

4.      Plaintiff Courtney Paden ("Paden") is a black female citizen of the United States and resident of Contra Costa County in the State of California. Plaintiff was employed by Family Service Agency of San Francisco within the Tender Lion Family Program as a Social Worker/Staff Therapist for three years until the involuntary at-will termination of her employment on 5/31/07.

5.      Defendant, Family Service Agency of San Francisco is a non-profit organization maintaining business throughout the City of San Francisco. Family Service Agency of San Francisco has 34 programs including the Tender Lion Family Program which is housed within the principal office in the Western Addition District of San Francisco, California.

*COUNTS*

6.      Plaintiff worked for Family Service Agency of San Francisco ("FSASF") for two years prior to the plaintiff's immediate supervisor (Debora Fletcher) being promoted from on-call Intake Worker to Program Director for the Tender Lion Family Program ("TLFP"). Plaintiff was also supervised clinically by TLFP Adjunct Clinical Supervisor (Audrey Dunn) beginning in late November of 2006. Plaintiff had three years of paid clinical work experience prior to graduating in 2003 (Dean's List, 3.9) from Howard University's School of Social Work, where plaintiff completed two year long clinical internships and summer international exchange social work experience. However, plaintiff was consistently overlooked by Ms. Fletcher especially regarding assignment and training as her decisions were made based on her negative stereotypes and assumptions about the ability and

- 2 -

performance of blacks/African Americans in violation of Title VII of the Civil Rights Act of 1964.

a) Ms. Fletcher stated that most mental health agencies are staffed by white females because most therapist positions require applicants to have a Master's degree and most African Americans are just not qualified. Ms. Fletcher acknowledged being "scared" when she caught the bus with a lot of blacks while in Washington, DC. She accused plaintiff of making her fear of physical attack although plaintiff is short and slim in stature and never verbally threatened her and has no history of being violent at work. Plaintiff was told by Ms. Dunn that black and Latina women are far more sexually promiscuous than white and Asian women and will do anything for a man.

b) Plaintiff who was the only black Social Worker/Staff Therapist at TLFP and had seniority within the department was not assigned to a formal school partnership in the first half of the fiscal year. Plaintiff was also not assigned to formal partnerships during previous fiscal years of employment 2004-2005, 2005-2006 respectively. Although two formal partnerships were available for the 2006-2007 fiscal year, two newly hired, less qualified staff therapist received these assignments. A formal partnership entails a written contract between TLFP/FSASF, the assigned staff therapist and the school and it greatly increases opportunity for professional growth as well as the chances of meeting productivity mandates as most children are more likely to attend school rather

than come to the clinic on their own and therefore can be seen on a regular and consistent basis. Additionally, plaintiff's colleague (Kathryn "Katie" Raycroft) who is white, held less seniority and was very behind in her work for the previous fiscal year was allowed to keep her formal school partnership for the 2006-2007 fiscal year (See attached copy of Memorandum of Understanding dated 9/27/06, Attachment A). Plaintiff was finally assigned a formal school partnership approximately 2 ½ months prior to involuntary termination after Ms. Raycroft resigned. However, plaintiff was not trained on how to complete the required paperwork for this partnership until 5/24/07 after plaintiff complained of receiving reminders to complete paperwork instead of training from Ms. Fletcher (See attached email dated 5/24/07, Attachment B).

c) Plaintiff was not informed of the process to sign up for a 9 month specialized training which provided additional opportunity for professional development and support to reach required productivity mandates by providing weekly productivity for attendance and participation. Plaintiff was promised a long-term specialized training by TLFP Division Director (Charlene Clemens) but plaintiff's chance at specialized training was canceled after initial training due to the unexpected loss of the affiliate program, Project Impact. Plaintiff's colleague (Therese Allen) who is white was allowed to attend this specialized training that was offered a few months later.

d) Plaintiff was also not assigned to an informal school partnership in the first half of the fiscal year. In contrast to a formal partnership an informal partnership does not entail a written contract but it does provide a little chance to reach out to more cases at a school within the catchment area. However, plaintiff was also not selected for an informal partnership until November of 2006 after plaintiff complained that four interns and a new staff therapist were being assigned to informal partnerships while plaintiff was left out but somehow expected to have the same productivity as colleagues who had assignments that increased the probability that they could reach billing mandates. When plaintiff was placed at an informal school partnership it was in the Bay View District which is outside our catchment area and required plaintiff to take three buses to participate (See attached email subject: Burton High dated 1/1/07, Attachment C).

e) Plaintiff received a "reminder memo" from Ms. Fletcher for not calling in on the day of approved sick leave. Although other staff were frequently late or did not report to work only the plaintiff and another black female administrative employee TLFP Program Manager (Charisse Lloyd) received these memos. Plaintiff complained to FSASF Human Resources Officer (Vickie Castro) after receiving this memo and wrote a response after nothing was done to discuss why only the two black female employees received this memo. However, neither Ms. Fletcher, new TLFP Division Director (Carole McKindley-Alvarez) or Ms. Castro responded to my request for a meeting to discuss the matter (See copy of response to reminder memorandum dated 3/12/07, Attachment D).

f)  Plaintiff was also not assigned enough cases (20-25 cases) in the clinic or the
    community to feasibly complete productivity mandates until May of 2007.
    Plaintiff was criticized for not meeting required productivity mandates yet Ms.
    Fletcher and Ms. Clemens continually approved the hiring of new staff therapists
    who were then assigned cases that could have increased plaintiff's caseload but
    were not assigned.

g)  Plaintiff and Ms. Raycroft both expressed disinterest in voluntarily pursuing
    clients with higher incomes due to a shared dedication to serving low-income
    clients. Both the plaintiff and Ms. Raycroft were informed by Ms. Fletcher a
    month or so later that our disinterest constituted insubordination however, only
    the plaintiff was scheduled to meet with Ms. Castro to further discuss the matter.
    Plaintiff was also then falsely accused of walking out of Ms. Flecther's office
    when in fact plaintiff verbally agreed to attend the meeting and left because it was
    after 6:00 pm and time to go home (See email subject: Meeting with me, dated
    10/25/06, Attachment E).

h)  Plaintiff met with Ms. Castro on 10/26/06 via FSASF Open Door Policy to ask for
    assistance on how to initiate an internal investigation into Ms. Fletcher's negative
    racial stereotypes and treatment of black female employees which was offensive
    and cause for concern along with other equally serious violations of FSASF
    Personnel Practices Manual including not allowing or criticizing the validity of

- 6 -

black female employees use of sick leave and/or documented medical conditions,
equal employment opportunity by not informing everyone that there was a sign up
process for formal 9 month specialized training.

8). Complaint: Plaintiff alleges that defendant engaged in employment discrimination
through retaliation based on plaintiff filing internal complaints with Ms. Lloyd, Ms.
Fletcher, Ms. Castro, and Ms. Mckindley-Alvarez and external formal complaints with the
Equal Employment Opportunity Commission alleging racial discrimination in violation of
Title VII of the Civil Rights Act of 1964.

a) Plaintiff received a written warning for not filing documents in charts while
plaintiff was on sick leave. Plaintiff's colleagues who had not filed documents
were given verbal warnings if anything and allowed to complete their filing a
month later during an administrative day (See staff minutes dated 2/9/07;
Announcements: 4th bullet, Attachment F). Plaintiff submitted a formal written
response to the written warning and subsequent probation plaintiff unfairly
received, which included a white female colleague warning memos and
evaluation which supports plaintiff's claim that the immediate supervisor showed
racial bias against plaintiff. Again, neither Ms. Fletcher, Ms. McKindley-Alvarez
or Ms. Castro responded to receiving this memo which included a request for a
meeting (See attached response to written warning memo dated 3/12/07,
Attachment, G).

b) Plaintiff met with Ms. Vickie Castro on or about 1/23/07 and 2/1/07 to discuss racial stereotypes verbalized by Ms. Fletcher and to ask why Ms. Dunn, who had only met with plaintiff three to four time was allowed to complete an annual evaluation that is bias towards plaintiff as Ms. Dunn was informed that plaintiff filed a complaint against Ms. Fletcher. Plaintiff informed Ms. Castro that discussing racial stereotypes in a group setting appears to make most people including the plaintiff uncomfortable. Therefore, plaintiff requested the complaint be considered formal but separate from group complaints against Ms. Fletcher, TLFP Administrative/Clinical Supervisor (Tom Beckeny), Ms. Dunn and Ms. Clemens (See email from Ms. Castro dated 3/12/07, Attachment H).

c) Plaintiff received a low performance evaluation which didn't include favorable feedback from former adjunct clinical supervisor who supervised plaintiff for 8 of the months under consideration or positive feedback from both San Francisco County and State Medi-Cal auditors. Plaintiff's evaluation included a threat of probation in February although the period covered in the evaluation ends on 12/31/06.

d) Plaintiff informed the Mrs. McKindley-Alvarez on 3/8/07 and 4/2/07 how Ms. Fletcher engaged in sabotage by taking and locking up plaintiff's charts and also by not approving plaintiffs work even when it met or exceeded standards which prevented plaintiff from avoiding additional warnings or probation. Plaintiff also reported that Mr. Beckeny was assisting Ms. Fletcher by not approving plaintiff's completed work so that plaintiff could file in clients respective charts. Mrs.

- 8 -

McKindley-Alvarez acknowledged being aware of this and she stated that once the plaintiff returned from approved 14 day leave she would meet with the plaintiff, Ms. Fletcher and Ms. Lloyd to get to address allegations of racial discrimination and harassment. However, once therapist returned from leave plaintiff was not scheduled to have meetings and was informed by Ms. Lloyd that plaintiff would not be able to meet with Mrs. McKindley-Alvarez until plaintiff followed agency new TLFP protocol by meeting with Ms. Lloyd first. Plaintiff and Ms. Lloyd met as requested however, were unable to come to a resolve because as black females we both felt we had been treated negatively based on race (See attached memo dated 4/23/07, Attachment I)

e) Due to the lack of response from the Ms. Castro and Mrs. McKindley-Alvarez plaintiff contacted EEOC by phone to inquire about the process of getting mediation and to file a formal charge (See attached letter from Equal Employment Opportunity Commission dated 4/26/07, Attachment J). Plaintiff was under the impression that a charge had been filed based on feedback from the assistant during the conversation. However, plaintiff received an Intake Questionnaire approximately three weeks later which asked questions that plaintiff had answered on the phone. Plaintiff completed this questionnaire and mailed it on or about 5/29/07.

f) During a meeting on 5/10/07 plaintiff informed Mrs. McKindley-Alvarez that plaintiff was exhausted due to untreated medical condition and nearly daily

- 9 -

harassment in the form of accusatory comments and duplicate emails and voicemails from Ms. Fletcher. Plaintiff offered resignation due to this intolerable working condition however, plaintiff's resignation was not accepted by Mrs. McKindley-Alvarez and she assured plaintiff that all three supervisors would not be employed as the fiscal year came to a close. She also promised that plaintiff would be employed past the fiscal year and that she would support plaintiff in teaching groups as planned during the summer if plaintiff agreed to follow up as agreed. Plaintiff agreed to meet with Mrs. Dunn and to meet with Ms. Fletcher and Ms. Lloyd in a week to get a plan of action for tasks Ms. Fletcher felt plaintiff had not followed up on. Mrs. McKindley-Alvarez agreed to have Ms. Castro follow up in a week with regards to why only Ms. Lloyd and plaintiff received "reminder memos" unfairly and without verbal warning.

g) Plaintiff was terminated at-will 21 days later under the pre-text of at-will termination less than 24 hours before approved sick leave for oral surgery (See attached approved leave request dated 5/24/07, Attachment K). Mrs. McKindley-Alvarez didn't follow progressive discipline per FSASF Personnel Practices Manuel which includes provisions of progressive discipline, notice of dissatisfaction and opportunity to improve (See termination letter dated 5/31/07, Attachment L)

h) Plaintiff wrote and hand delivered a memo asking for time to terminate with clients even without pay or benefits (See attached letter dated 5/31/07,

- 10 -

Attachment M).  Plaintiff did not hear a timely response and was advised by the

Director of Children, Youth and Families (Sai-Ling Chan-Sew) to write another

letter including her and other compliance officers.  Plaintiff wrote a letter asking

for due process in order for termination and documentation completion (See

attached letter dated 6/6/07, Attachment N and resignation letters from Ms.

Raycroft dated 1/22/07 and 3/14/07 Attachment O and P).  Therapist received a

phone call from Human Resources Officer on 6/8/07 informing plaintiff that she

received my memos and would respond early next week however the agency did

not respond by phone or in writing until 6/18/07.

9).     Plaintiff contacted EEOC district office to inquire why they didn't protect

plaintiff from such seemingly discriminatory action.  The EEOC representative stated that

they couldn't not find the original compliant filed by plaintiff and that plaintiff would

need to come in or re-mail a claim for a charge.  Following a week recovery from surgery

plaintiff reported to EEOC to file a charge on 6/7/07.  Plaintiff requested mediation prior

to an investigation.  However, (according to EEOC intake Officer, Eric Darius) the

defendants declined mediation on 6/26/07 and requested an investigation.

10.     On or about 5/3/08, more than 180 days having elapsed since the formal filing and

receipt of plaintiff's charge, the EEOC issued plaintiff a Notice-of-Right-to-Sue letter

(see attached copy, Attachment O) which included a closed case notice.  Plaintiff noted

that EEOC officer's investigation did not include any affidavits or declarations from

- 11 -

those identified on the formal charge of discrimination or the witnesses listed on the Intake Questionnaire.

11.    As a result of immediate at-will termination, Plaintiff suffered a loss of income and benefits.

12.    As a result of not being able to terminate or say good-bye with clients and their families (some of whom plaintiff provided service for three years), Plaintiff suffered harm and damage to her reputation as it appears that plaintiff violated plaintiff's Code of Ethics and just abandoned clients.

13.    Defendant's acts of disparate treatment, racial preferences, retaliation and indifference including lack of follow through with Dental insurance and immediate termination of duties were performed with reckless indifference to plaintiff's protected civil rights.

14. Plaintiff demands a jury trial on all claims for which a jury is permitted:

### *PRAYER FOR RELEIF*

WHEREFORE, plaintiff respectfully prays this Court:

- 12 -

(a) To order the defendant to accept plaintiff's resignation that was offered prior to plaintiff's discriminatory at-will termination, pursuant to Title VII of the Civil Rights Act of 1964;

(b) To order the defendants to refrain from and retract all confidential and/or slanderous remarks made about plaintiff to all former and future FSASF employees;

(c) To order defendants to pay plaintiff's dentist (Dr. Leon Taylor) for services that were rendered but not paid for and/or for services that should have been rendered had plaintiff had valid dental insurance.

(d) To grant plaintiff equitable and other relief as may be appropriate including injunctive orders, damages, cost and attorney fees sought under 42 U.S.C. Section 2003-5 (g) Title VII of the Civil rights Acts of 1964.

Respectfully Submitted,

DATED: 7/3 1 /08

_____
SIGNATURE OF PLAINTIFF

Courtney Paden

1529 Florida Avenue Richmond, CA 94804

ms.paden@hotmail.com

510-932-2265

Enclosures: Exhibits Attachments A-R    - 13 -

## EXHIBITS

Attachments A-R

A.    Memorandum of Understanding for Formal School Partnership SFY for Katie Raycroft dated 9/27/07. 2 pages.

B.    Email from Ms. Fletcher to plaintiff dated 5/24/07 1:05 pm.

C.    Email from Ms. Fletcher to plaintiff dated 1/11/07 10:26 am.

D.    Memo to Ms. Fltecher from plaintiff dated 3/12/07. 6 pages.

E.    Memo to Ms. Fletcher to plaintiff and others dated 1/26/07 2:07 pm.

F.    Memo from Ms. Fletcher to plaintiff 10/25/06 6:26 pm.

G.    Memorandum from plaintiff to Ms. Flecther dated 3/12/07. 5 pages and 27 pages of enclosures.

H.    Email from Ms. Castro to plaintiff and others re: group issues dated 3/12/07.

I.    Memo from Ms. Lloyd to Mrs. McKindley-Alvarez 4/23/07.

J.    Letter from EEOC to plaintiff dated 4/26/07.

K.    Request for leave signed by Ms. Flecther dated 5/24/07.

L.    Memo to plaintiff from Mrs. McKindley-Alvarez re: termination.

M.    Memo to Ms. Castro from plaintiff dated 5/31/07 delivered 6/1/07. 2 pages.

N.    Letter to Mrs. McKindley-Alvarez from plaintiff dated 6/6/07. 2 pages and 2 more pages of enclosures.

O.    Memo from Ms. Raycroft to Ms. Fletcher dated 1/22/07 re: resignation.

P.    Memo from Ms. Raycroft to Ms. Fletcher dated 3/14/07 re: extension of resignation.

Q.    Copy of Notice of Right to Sue from EEOC dated 5/1/08 received on or about 5/3/08.

R.    Email from Ms. Castro to plaintiff dated 4/20/07 12:05 pm

EEOC Form 161 (2/08)     **U.S. ~~ANNUAL~~ EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Courtney Paden<br>1529 Florida Ave.<br>Richmond, CA 94804 | From: | San Francisco District Office<br>350 The Embarcadero<br>Suite 500<br>San Francisco, CA 94105 |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| **550-2007-01554** | **Eric C. Darius,**<br>**Investigator** | | **(415) 625-5670** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Michael C. Baldonado*     5-1-08

Enclosures(s)                    **Michael Baldonado,**          *(Date Mailed)*
                                 **Acting Director**

cc:  **FAMILY SERVICE AGENCY**
     **Of San Francisco**
     **1010 Gough Street**
     **San Francisco, CA 94109**

# MEMORANDUM OF UNDERSTANDING

### SFUSD / SFCBHS School-based Partnership Classroom
### FY2006-2007

This Memorandum of Understanding (MOU) is to further define the School-based Mental Health

Partnership at ___Everett Middle School___ School (referred to as "School") where on-site

mental health services are delivered by ___Tender Lon Family Program___ (Mental Health Agency).
___FSA___

**The Mental Health Provider (referred to as "Provider") will be**

___Katie Rayroft___ , ___ASW___
                name                                    degrees/licenses

**The Provider's schedule at school (for a total of __6__ hours per week at school)**


**Services will be provided to students in the following classes:**


**The Provider will:**
  - ➢ Provide individual therapy to __3-5__ (specify minimum & maximum #) of students
    concurrently.
  - ➢ Provide group therapy to __4-6__ (specify minimum & maximum #) of students,
    addressing the following issues:

  - ➢ Meet with teacher* __1__ times per __2 wks__ (specific meeting time __CPT meeting__
  - ➢ Develop a consistent and mutually agreed-upon work schedule with the teacher.
  - ➢ Attend appropriate IEPs during scheduled on-site time (school will provide at least 2 weeks
    notice).
  - ➢ Other activities (specify, e.g., outreach and services to parents, attendance at SST meetings,
    consultation to principal, coordination with other outpatient MH providers, consultation to
    teacher, etc.):


**The School will:**
  - ➢ Provide an appropriate place to provide therapeutic services
  - ➢ With provider, develop and follow a consistent schedule
  - ➢ Allow for teacher time with Provider (*see above)
  - ➢ Assist in parent/guardian contact
  - ➢ Assist in obtaining *written* parent/guardian consent for Individual and/or Group therapy
  - ➢ Will welcome the provider into the classroom
  - ➢ Schedule IEPs in consultation with provider
  - ➢ Other activities (specify):

# MEMORANDUM OF UNDERSTANDING

Any concerns about services/interventions provided by either the School or Provider will be communicated initially to the _Francisco Durán_ (Principal of School) and _Debora Fletcher, PhD, Program Dr._ (Partnership Provider Supervisor). If resolution of concerns raised by either the School or Provider cannot be achieved at this level, then the matter should be presented to the SFUSD SELPA Director and the Assistant Director of School-based Services/SF Community Behavioral Health Services for further consideration.

Signature _____    Date _9/27/06_
                Principal

Signature _____    Date _9/27/06_
         Mental Health Provider Supervisor

Signature _____    Date _9/27/06_
         Teacher - Learning Support Consultant

Signature _____    Date _____
                Teacher

Signature _____    Date _____
                Teacher

Signature _____    Date _9-27-06_
         Mental Health Provider Supervisor

## ˙Courtney Paden

**From:**       Debora Fletcher [dfletcher@fsasf.org]
**Sent:**       Thursday, May 24, 2007 1:05 PM
**To:**         Courtney Paden (E-mail)
**Cc:**         Charisse Lloyd (E-mail); Carole Mckindley-Alvarez (E-mail)
**Subject:**    Partnership Instructions and Outcome Data Form

  

Instructions.doc    Outcome Data
                    FORM.doc

        Hi, Courtney--
    Per our meeting today, attached are the Partnership Instructions and the
Outcome Data form.  Please let me know if you have any questions.
    Thank you.
    Debora

**Courtney Paden**

| | |
|---|---|
| **From:** | Debora Fletcher [dfletcher@fsasf.org] |
| **:nt:** | Thursday, January 11, 2007 10:26 AM |
| **i o:** | Courtney Paden (E-mail) |
| **Subject:** | Burton High School |

Courtney--
    To duplicate the voicemail I sent you this morning, Burton High School
expects you in their Wellness Center tomorrow morning, Friday, January 12,
2007 at 8am.
    Thanks.
    Deb

**To:**   Debora Fletcher, TLFP Program Director

**From:** Courtney Paden, TLFP staff Therapist/Social Worker *CP*

**Cc:**   Charisse Lloyd, TLFP Program Manager
          Carole Mckindley-Alvarez, Senior Division Director
          Vickie Castro, FSA human Resources Director

**Date:** March 12, 2007

**Re:** Response to your reminder memorandum dated January 11, 2007

*(6 pages)
including
enclosures*

I apologize for my delay in sending this response memo. I truly wanted to avoid a written response, but after reporting my concerns to both you and Vickie I don't feel that attention was given to the way in which you subjectively sent these reminder memo. Therefore I feel it is necessary to document my concerns to you, our TLFP Program Manager, our new Division Director and Vickie regarding your unjustifiable use of sending as these reminder memos.

The purpose of this memo is to 1) express my reasons for strongly disagreeing with the way you unfairly implemented this policy and 2) to request that you amend in writing your unfair use of this policy.

*1) Reasons for my disagreement with your unfair implementation of this policy:*

1. The first memo that I received (see attached memo dated 1/11/07) was for permitted use of sick leave on 1/9/07. I have provided a background regarding my use of sick leave below.
2. The second memo that I received (see attached memo dated 1/23/07) was for not calling before or at 9:00 am to report that I would be late for our scheduled staff meeting. I left a voice message at 9:21am not 9:50am as your memo suggest to report that I was in a near car accident and could not call before 9:00am.
3. All other staff members were informed of this policy to call before 9:00am (see attached email dated1/26/07). All other staff members were also informed about receiving a reminder memo if they did not follow this policy. Yet, you had already written up both Charisse and myself for allegedly not following this policy (see attached memo dated 1/12/07). However, both Charisse and myself left voice messages that you now claim you didn't receive. Further, if you didn't receive my voice message then shouldn't I have received a verbal warning?
4. Three staff members (not including Charisse or myself) have since reported late on at least five total occasions since you sent your email. However, none of those staff members report that they have never received a reminder memo from you. It appears that these reminder memos are only sent to Charisse and myself.

*Background regarding my permitted use of sick leave during the week of January 8, 2007:*

On Monday, 1/8/07, I spoke with you to inform you that I was still suffering from some sort of allergic reaction and would not report to work. I informed you that my allergist could not see me until Wednesday morning 1/10/07 and asked could I not report back to

work until that time. You approved of this two-day sick leave and agreed to inform the contact person at Phillip and Sala Burton High School that I would not make my scheduled afternoon visit but that I would stop by on Friday 1/12/07. On that same day I requested and Charisse Lloyd (TLFP Program Manager) agreed to cancel my Trans-Metro Express and Laidlaw transportation pick-ups for Tuesday 1/9/07. I agreed to call on January 10, 2007 to inform you if I was feeling well enough to return to work following my appointment.

On 1/9/07 I called my client's parents/guardians directly to inform them that I was sick and needed to cancel their appointments. Your correct in that I did not call either you or Ms. Lloyd on Tuesday, 1/9/07 but I already had your approval for two-days of sick leave. I was not scheduled to report back to work until Wednesday 1/10/07. On 1/10/07 I left voice messages for both you and Ms. Lloyd informing you that I needed to take off the rest of the day so that I could recuperate from my symptoms in order to return to work on Thursday 1/11/07. I received two calls from you on 1/10/07 late in the afternoon in which you inquired about one of my scheduled school visits and whether or not I had documents in my room that needed to be filled. Since you now claim that you did not know why I did not report to work or call in on 1/9/07, why did you not take the time during either of these conversations on 1/10/07 to find out where I was a remind or me to call in if in fact you just wanted to remind me of this policy.

Therefore, I was completely shocked when you handed me with the attached memorandum on 1/11/07. I had two more clients scheduled for that afternoon, so I was unable to get into a detailed conversation with you over the overtly disingenuous nature of this memo. I informed you that I would review the FSA Personnel Manual and get back to you with a response. Before I could even respond in writing to the first reminder memo from 1/11/07, I was hit with another reminder memo from you regarding my not calling to report why I reported late for staff meeting on 1/23/07. I am not sure why you didn't receive a voice message from me prior to talking to me directly as I originally called at 9:21 am. I informed you that I was in a near car accident and while swerving and braking hard in traffic I didn't grab my phone (which was out of reach nor safe to use at the time) to call to tell you I was so distraught and shaken that I couldn't even get out of my car. When you came to my car with a bottle of water and expressed concern regarding my health I actually believed that you were sincere in your inquiry. This delusion of hope was quickly shattered a few hours later when you hand delivered another reminder memo.

*2) To request that you amend in writing your unfair use of this policy:*

I understand and fully support your attempt at trying to execute FSA personnel procedures regarding attendance and punctuality. I strongly disagree with the way that you unfairly implemented this policy that was unknown to most staff including myself. In addition, I was hurt because while I didn't know about this policy I have a habit of calling in to report if I will be late or to inform you and Charisse of my whereabouts when I am not in the building.

I am requesting a formal meeting to resolve this matter as other TLFP staff members (including yourself) repeatedly report late to staff meeting and claim that they have not received reminder memos. Further, I am requesting a written amendment to these reminder memos (dated 1/11/07 and 1/23/07), as they should not have been sent before all staff was informed of this new policy.

Enclosures
1. Reminder memorandum from Debora to Courtney dated 1/11/07
2. Reminder memorandum from Debora to Charisse dated 1/12/07
3. Reminder memorandum from Debora to Courtney dated 1/23/07
4. Email regarding reminder memo policy from Debora to all TLFP staff dated 1/26/07



**MEMORANDUM TO:**      Courtney Paden
                        Staff Therapist

**FROM:**               Debora Fletcher
                        Program Director
                        Tender Lion Family Program

**DATE:**               January 11, 2007

**SUBJECT:**            Reminder

This is a reminder as per our agency's Personnel Practices Manual (Section 3.10); you must call in when you are going to be absent from work. On Tuesday, January 9, 2007, you failed to report to work and did not contact Charisse Lloyd, the Program Manager or myself. If this should happen again, it will be grounds for disciplinary action.

Thank you.



**MEMORANDUM TO:**     Charisse Lloyd
                       Program Manager

**FROM:**              Debora Fletcher
                       Program Director
                       Tender Lion Family Program

**DATE:**              January 12, 2007

**SUBJECT:**           Reminder

This is a reminder as per our agency's Personnel Practices Manual (Section 3.10); you must call anytime you are going to be absent from work. On Friday, January 12, 2007, you failed to return to the office, or call me after the 10:00a.m transportation meeting, and when I called you in the early afternoon, you stated that you had gone home ill after the meeting. In keeping with the agency policy, I just want to remind you that if this should happen again, it will be grounds for disciplinary action.

Thank you.



**MEMORANDUM TO:**    Courtney Paden
Staff Therapist

**FROM:**    Debora Fletcher
Program Director
Tender Lion Family Program

**DATE:**    January 23, 2007

**SUBJECT:**    Reminder

This is a reminder as per our agency's Personnel Practices Manual (Section 3.10); you must call in when you are going to be late or absent from work. On Tuesday, January 22, 2007, you failed to call in to myself or Charisse Lloyd, Program Manager to report you were going to be late to the Administrative Staff Meeting which is held every Tuesday at 9 a.m. I do recognize that you eventually called in at 9:50 a.m. to report you were feeling ill and that you were in your car in the staff parking lot. While I am sorry that you were ill, again, you did not call to inform me that you were late. If this should happen again, it will be grounds for disciplinary action.

Thank you.

**Courtney Paden**

| | |
|---|---|
| **From:** | Debora Fletcher [dfletcher@fsasf.org] |
| **Sent:** | Friday, January 26, 2007 2:07 PM |
| **To:** | Anjuli Sherin (E-mail); Charisse Lloyd (E-mail); Courtney Paden (E-mail); Katie Raycroft (E-mail); Mark Mazza (E-mail); 'Megan McKellogg'; Rebekah Kao (E-mail); Scott Schulkin (E-mail); Therese Allen (E-mail); Tom Bekeny (E-mail) |
| **Subject:** | Absences |

Hi, all.
    Please remember that when you are sick or otherwise absent from work, you
must call in to Charisse and myself.  Otherwise, you'll receive a an
annoying reminder memo from me.
    Thanks.
    Deb

## ·Courtney Paden

| | |
|---|---|
| **From:** | Debra Fletcher [dfletcher@fsasf.org] |
| **nt:** | Wednesday, October 25, 2006 6:26 PM |
| **To:** | Courtney Paden (E-mail) |
| **Cc:** | Charlene Clemens (E-mail); Vickie Castro (E-mail) |
| **Subject:** | Meeting with me |

Courtney--
    This is to inform you that walking out of my office and refusing to meet
with me today is a form of insubordination.  This is a very serious matter.
I'd like to meet with you and Vickie Castro in Ms. Castro's office on
Friday, October 27, 2006 at 11am.  The schedule you provided me of your
client appointments indicates that you do not have any clients at that time.
Please confirm that you can attend this meeting or contact myself or Ms.
Castro in order to arrange another, more convenient time on Friday.
    Thank you.
    Debora Fletcher

**To:**    Debora Fletcher, TLFP Program Director
**From:** Courtney Paden, TLFP Staff Therapist/Social Worker *CP*
**Cc:**    Charisse Lloyd, TLFP Program Manager
             Carol McKinley-Alvarez, FSA Senior Division Director
             Vickie Castro, FSA Human Resources Director
**Date:** March 12, 2007
**Re:** Disagreement with written warning and 30-day probation

(5 pages)
plus 27 pages
of enclosures

The purpose of this memo is to 1) acknowledge that I received a memorandum dated 1/11/07 and to explain why I did not sign the memo at the time of receipt 2) to clarify why I was unable to file all chart documents by 5:00pm on 1/11/07 and 3) to formally express my objection to and disagreement with the written warning and subsequent 30-day probation that began on 2/5/07.

*1) Acknowledgement that I received a memorandum dated 1/11/07 and explanation of why I did not sign the memo at the time of receipt:*

I sincerely apologize for the extensive delay in formally responding to your memorandum. I have been overtaxed lately and therefore needed to channel my limited energy towards my client contacts. I am now formally acknowledging that I received your memorandum on the afternoon of 1/11/07. I did not sign the memo as you requested because there was not enough time to thoroughly read the contents of your memorandum prior to the start of my session. Additionally, this would have distracted me from the focus that was needed for my scheduled client contacts. I informed you that I would have to read and then respond in writing at a later date and time. Although I am still attending to medical concerns I now have the time to respond to the numerous memorandums that you have given to me with over the last two months.

*2) Clarification on why I was unable to complete charting by 5:00pm:*

As you know, I had some of the documents that your memorandum references ready to file in my room. However, I was unable to have those items in my charts by 5:00pm as you requested when you gave me your memorandum. I did not have time to read and object to your memorandum, which states I could give these documents to you. Considering that you are aware that I have scheduled client contacts on Thursday from 2:00 – 5:00pm it is unclear why you handed me this memorandum around 2:45 pm after you return to the clinic from your weekly Thursday off-site appointment. In fact, I was only available to receive this memorandum because my 2:00 appointment was sick and canceled.

*3) A formal objection and disagreement with the written warning and subsequent 30-day probation that began on 2/5/07:*

On 1/12/07 I was able to thoroughly read the memorandum dated 1/11/07 and I was very distressed by the contents of the memorandum. For starters it included an addendum with confidential client names on it (see memorandum dated 1/11/07). Including the first

and last names of my client's was unnecessary and unethical as the names of my client should not be included in a personal memorandum that you requested to include in my personnel file. Secondly, your memorandum included numerous inaccuracies, which made it appear as if a lot more information was missing from my charts. For example, you listed POC for four clients that were completed and in their charts (please review audit checklist sheets from the first SF County audit). Also no distinction was made between these clients and five clients whose POC were not in their charts, but had been shown to you during a meeting (*that I initiated*) with you, Tom Beckeny (TLFP Clinical Supervisor) and myself to address why he still hadn't signed off on my POC's that were turned in as early as October of 2006. If your memorandum noted that these five POC's were complete and shown to you during this meeting but not filed that would be one thing. However, your wording makes it seem as if the work wasn't complete and as if you weren't made aware of reasons why the five POC's were not filed in the client charts (namely lack of signature and pre-approval by Tom).

*Reasons for my objection to and disagreement with the Written Warning dated 1/11/07:*

1. I strongly feel that your written warning was an act of retaliation for my questioning why Tom was allowed to hold up both my completed progress notes and completed PURQC's. I have and will continue to acknowledge that Tom initially pointed out valid concerns for what was wrong with my progress notes (namely missing a plan at the end of the note). However, when I corrected these mistakes, he still did not initial the bills. He also did not sign off on my POC after I added the language that he requested. I informed Tom of my concerns and requested to meet with you and him in attempt to resolve this dilemma. During our meeting I expressed concern that I had a pile of client documents that I could not file or turn in due to his or your lack of signatures. Subsequently all staff members reiterated my concerns regarding Tom's inefficiencies as a clinical and administrative supervisor during our 2nd TLFP Staff Retreat on 12/18/06. During this retreat you agreed (at the recommendation of the facilitator) to inform Tom that all staff felt we needed another supervisor.

2. I also strongly disagree with the timing of your internal chart audit and your decision to not acknowledge that some clinicians had valid reasons to hold onto documents in their rooms because the client's confidential charts were unavailable to them because of the audits. The last batch of client charts were not returned to the chart room until 12/27/06, and not put back in order until 12/28/06 when I (at your request) took them out of boxes on the floor and put them back in order in their respective filing cabinets. In addition, a dozen or so charts were moved again on 1/5/07. It makes sense that some client charts were more up to date than others with regard to filing considering that clinicians did not have full access to all of their charts. It seems inappropriate to chose to have an internal audit within three days of charts being returned to the chart room and while they were in the process of being moved again.

3. Your written warning also fails to acknowledge that you had asked me on several occasions to prioritize work in the chart room over my own charting. In fact I was working in the chart room on 1/5/07 with Megan when you pulled Charisse to begin your internal chart audit. You were well aware that I had not filed the documents that I had just recently received back from Tom (prior to his Christmas vacation). You were also aware that I had several items that were turned in months prior but not approved of or signed off by you or Tom. If I had put them in the charts without one of your signatures I guess I would be written up for not following protocol by getting required signatures before filing documents.

4. If you claim that you were not aware of and/or disagree with the concerns listed above. It also appears that you did not follow the FSA Personnel Practices Manual procedures (Section 5.2) with regard to progressive discipline. If in fact you were following procedures by alerting me that my charts did not pass your internal audit the first thing I should have received (*if anything*) was a verbal warning and time to correct the situation. However, you chose to apply discipline in inequitable manner. The points listed below and attached enclosures fully illustrate my claim.

    a. You applied generous progressive discipline with another TLFP Staff Therapist Katie Raycroft (see attached memo dated 1/11/07 which includes a memo dated 11/27/06). According to your memo (dated 11/27/06) Katie received a verbal warning on 11/21/06 with regards to both her chart documentation and billing. This memo also states that Katie had until 12/20/06 to catch up or she would be placed on probation. Your memo also suggests that a conversation of some sort took place around ways in which she could catch up such as consulting with Tom or other staff. However, Katie had not caught up with her charting by 12/20/06 but she was not placed on probation until 1/11/07. Your delayed discipline allowed Katie approximately three additional weeks to catch up and avoid probation. I, on the other hand, was neither given generous verbal warnings, nor was I given three weeks with support of any kind to catch up in attempt to avoid a written warning or probation. In addition, there is evidence to suggest that you were formally made aware that Katie was behind on chart documentation as earlier as the first SF County audit yet you waited approximately four months before documenting your concerns.

    b. Interestingly, although Katie and I both received written warnings on the same day Katie was given until the 9th of February to complete her charting and filing while I was given until the 1st of February. Katie was also given time to review your memorandum to inform you of any information she felt was inaccurate. I was not given this option as it would have save time from writing this memo as you knew that five of my POC's were reviewed by Tom, but not signed and therefore not in the charts (see memo dated 1/12/07). It is unclear why this difference in

discipline was applied however I am very uncomfortable being held to higher standards that other staff therapist especially given my history at TLFP/FSA of being treated unfairly with regard to orientation, discipline and performance evaluation (see attached memo dated 2/2/06).

c. According to Charisse no TLFP staff member passed the internal audit. However, It is my understanding that not all clinicians received verbal or written warnings following your internal chart review. Charisse's claim was confirmed weeks later during our staff meeting on 2/6/07. During this staff meeting two staff members (not including myself or Katie) admitted they were behind in completing PURQC's and progress notes and that they had piles of documents, which hadn't been filed in client charts (see attached staff minutes dated 2/7/06, attached copies of 2 billing slips from each staff, printout of late billings from off-site staff). Interestingly, one of these staff members who acknowledged being behind on completing PURQC's, progress notes and filling paperwork was allowed for at least three months to work on paperwork from home on Fridays. It is unclear how she got behind and why was she rewarded with paid days off when her work was not being completed or filed properly. I spoke with you briefly following the meeting to inquire why you had not given all TLFP staff a verbal warning following your internal chart review. You claimed all other staff showed you there pile of unfilled documents. I expressed my frustration that you didn't give me this option before writing a written warning even though I had been on sick leave on from 1/8/07 to 1/10/07.

Due to the prejudicial manner in which you applied this written warning and subsequent 30 day probation I am requesting a formal meeting with you, our TLFP Program Manager, our new Division Director and Vickie. During this meeting I hope that we can all agree on an amendment to this written warning and subsequent 30-day probation, which will address the above listed reasons for my objection and disagreement.

Enclosures (Please note main points of reference have been highlighted for convenience)

1. Confidential memorandum from Debora to Courtney dated 1/11/07*
2. Confidential Written Warning from Debora to Katie dated 1/11/07* (Includes Chart Documentation memo from Debora to Kate dated 11/27/06
3. Late charting documentation memo from Debora to Courtney dated 1/12/07
4. Memo from Courtney to previous TLFP Program Director re: Disagreement with Probationary Status dated 2/2/06
5. Staff Meeting minutes dated 2/7/07
6. 2 billing slips from each TLFP Staff Therapist* Please note differences between dates of service and date printed and reviewed by Tom or Debora
7. TLFP Monthly Units of Service for November 2006 Please make note of the note at the bottom of the page for off-site TLFP Staff Therapist
8. Confidential Written Warning from Debora to me dated 2/5/07*

4

9. Page 1 of Confidential Written Warning from Debora to Courtney with correction dated 2/5/07

\* Please note that confidential clients names have been covered with whiteout, as they are not necessary the purpose of this memo.



## CONFIDENTIAL

**MEMORANDUM TO:**    Courtney Paden
                               Staff Therapist

**FROM:**             Debora Fletcher
                               Program Director
                               Tender Lion Family Program

**DATE:**             January 11, 2007

**SUBJECT:**        **Written Warning**

This is inform you that you are receiving a written warning regarding your chart documentation not being up to date.

I have conducted a review of your client charts and have found that your documentation is not up-to-date. Please see attached listing of your clients and results of the chart review. You are hereby directed to bring to me by 5pm today, January 11, 2007, any and all documents that you have not yet filed in your client charts. Once I determine which charts continue to be out of compliance, you are expected to bring the chart documentation pertaining to those charts up to date **by 5:00pm, Thursday, February 1, 2007.** I will identify those charts once you have submitted all outstanding chart documentation. Failure to do so will result in further disciplinary action up to and including termination.

During this time, you will be expected to continue to keep all of your chart documentation on your other client's up to date. In addition, all billing corresponding to any services provided to your clients up to January 30, 2007, must also be submitted by the February 1st deadline.

_unwilling to sign  DF 1/11/07_

_____    _____
Courtney Paden                                 Date

                                               _1-11-07_
Debora Fletcher                               Date

Attachment

Cc: Charlene Clemens
      Personnel File

Review of Courtney Paden's Client Charts – 1/10/07

S

  Transferred to CP on 10/20/06.
  No paperwork in chart since that time.


S      – AB3632
  Opened 9-16-03
  Last Plan of Care dated 6-07-05
  No current Plan of Care in chart
  Progress Notes – None since 8/31/06


J      – AB3632
  Opened 10/10/01
  Plan of Care dated 9/19/05 (late)
  Progress Notes – None since 6/28/06


I     – AB3632
  Opened 4/13/04
  Plan of Care 3/24/06
  Progress Notes – None since 8/16/06


N      – AB 3632
  Opened 10/19/01
  Plan of Care 9/28/05
  Progress Notes – None since 6/26/06


L

  Opened 10/21/05
  Plan of Care 3/17/06
  Progress Notes – None since 6/23/06


E

  Opened 10/12/06
  Assigned to CP on 10/12/06.  No opening paperwork.
  Progress notes – none since 8/01/06


F.     – AB3632
  Opened 10/26/01
  Assigned to CP on 10/13/06.  Has not completed paperwork to transfer case under
  her name.
  Plan of Care – 11/15/05 by Larry Lariosa.  No current Plan of Care.
Progress notes – None since 10/31/06


A    – AB3632

Open 2/09/05
Plan of Care 2/08/06
Progress notes – none since 7/14/06

D(

Opened 1/27/06
Plan of Care 5/04/06
Progress notes – none since 8/25/06

A          ₁ – AB3632
Opened 10/31/06
Assigned to CP 12/01/06.  Paperwork not yet done to put under CP's caseload
Plan of Care – none
Progress notes – none since 11/10/06

ℂ          – AB3632
Opened 11/19/02
Plan of Care 11/22/05.  No current Plan of Care.
Progress notes – none since 8/25/06

J                                                    (

Has not been closed although transferred to Westside on 11/2//06

M

Assigned to CP 1/03/07.



## CONFIDENTIAL

**MEMORANDUM TO:**    Katie Raycroft
                     Staff Therapist

**FROM:**            Debora Fletcher
                     Program Director
                     Tender Lion Family Program

**DATE:**            January 11, 2007

**SUBJECT:**         **Written Warning/Probation**

This memo is in follow-up to my memo of November 27, 2006 regarding your chart documentation
(copy of memo attached). At that time, you were directed to bring all chart documentation up-to-date by
December 20, 2006 and that if you did not, you would be placed on probation. I have done a thorough
review of your charts and find that you are still behind in your progress notes in many charts (see
attached listing of findings from my chart review). Please review these findings and inform me of any
information you feel is inaccurate by 5pm, January 12, 2007.

Since you have not brought your charting paperwork up to date, you are being placed on a 30-day
probation status effective today, January 11, 2007. You will be expected to bring all of your paperwork
up to date by 5:00pm, Friday, February 9, 2007. Failure to do so will result in further disciplinary
action, up to and including termination.

By signing this document, you only confirm that you have received
this memo & the attachments.

Katie Raycroft

1/11/07
Date

Debora Fletcher

1-11-07
Date

Attachment

Cc: Charlene Clemens
    Personnel File

TO:     Katie Raycroft
FROM:   Debora Fletcher
DATE:   November 27, 2006
RE:     Chart Documentation

This memo is to reiterate our discussion last week on Tuesday, 11-21-06. At that time, we discussed the fact that you have not turned in any billing for August, September, or October and very little billing for November, 2006. You informed me that you were behind in your progress notes and had therefore, not turned in the billing. We discussed what could be helpful to you in catching up and reasons why you have fallen behind in your chart documentation. I informed you that I would do a review of your charts and I told you that you must catch up on your charting by Dec. 20th, 2006 and that if you do not, you would be placed on probation. You were advised to consult with Tom Bekeny and with other staff, as you see fit, for input on managing your time and completing chart documentation in a timely manner. I also advised you that you are expected to keep up with your charting documentation responsibilities as a part of your job.

Results of Review of Katie Raycroft's Charts, completed January 10, 2007

Open cases showing no billing activity from    to    .

| | |
|---|---|
| B | M |
| D | M |
| D | S |
| F | S |
| F | S |
| G | T |
| H | T |
| L | |

Chart Review Findings

B

Last progress note – 10/03/06

D

Last progress note -- 9/01/06

D            -- AB3632
Last progress note – 10/05/06

D

Last progress note – 10/03/06

F            – AB3632
Last progress note –6/29/06

F

No Plan of Care
Last progress note 11/01/06

G            – AB3632
Last progress note 9/25/06

H

Last progress note 11/02/06

L

Last progress note – 3/15/06

L

Last progress note – 10/11/06

M

Last progress note – 9/18/06

M

Last progress note – 11/08/06

M

Last progress note – 9/29/06

M

Opened 9/12/06
No diagnosis, but note from Tom Bekeny dated 10/10/06 to do diagnosis for his signature.
No Plan of Care
Last progress note – 10/04/06

S                      – AB3632
Last progress note – 11/17/06

S

Plan of Care dated 1/30/06 –not signed by Tom Bekeny
Last progress note – 7/24/06

S                      – AB3632
Last progress note -- 9/25/06

S                      – AB3632
Last progress note – 6/12/06

T

Last progress note -- 7/26/05

T              – AB3632

TO: Courtney Paden
FROM: Debora Fletcher
DATE: January 12, 2007
RE: Late Charting Documentation

This memo is written to confirm that as of 5pm, January 11, 2007, you did not turn in any additional chart documentation materials as advised in my written warning memo dated January 11, 2007 regarding your chart documentation not being up-to-date.

**To:**   Kenneth Parker, TLFP Program Director
**From:** Courtney Paden, TLFP Staff Therapist
**Cc:**   Charlene Clemens, FSA Division Director
         Vickie Castro, FSA HR Director
         Leslie Zeitler, TLFP Clinical Supervisor
**Date:** February 2, 2006
**Re:**   Disagreement with Probationary Status

I am writing this memo to express my disagreement with the 3-month Probationary Status, scheduled to begin on 1/23/06.

*Disagreement with Probationary Status:*
You, Leslie Zeitler (my clinical supervisor), and I met on 1/23/06 to continue a discuss my annual performance evaluation that began on 12/27/05.  At the beginning of this meeting on 1/23/06 (which I was previously told would actually be a paperwork training) you handed Ms. Zeitler and me an annual review and a Plan of Improvement.  Through reading these documents I learned that I was on a 3 month probationary status allegedly due to subpar unit production and lack of PURQC completion.  You asked that I sign the Plan of Improvement and PURQC checklist to show that I was finally trained.  During this meeting I informed you that I would not sign anything until we completed the training, which would include receiving completed samples of paperwork that I asked for when I was offered this job.  However, after thoroughly reading all of the documents I received I have decided not to sign the Plan of Improvement document or the accompanying annual performance review that you presented to both Ms. Zeitler and me during the 1/23/06 meeting, because I disagree with the Probationary Status and the contents of the annual review.  There was no place on the Plan of Improvement to acknowledge my disagreement with the performance evaluation, Probationary Status, or the Plan of Improvement.

*Reasons for Disagreement with Probationary Status:*
1. It appears that FSA Personnel Practice Manual orientation procedures were consistently not followed.  I began my first day at TLFP on 4/26/04 and I did not receive a 4-month review (8/26/04), a 6-month review (10/26/04), or an annual review (4/26/05).  If my performance was under question, this issue should have arisen during these reviews (had they been completed).

2. It also appears that FSA Performance Management Program policy and general guidelines were not followed:
   a. HR Director Vickie Castro requested from you a copy of my quarterly coaching along with my job description on 4/27/05, but we did not have a quarterly coaching at that time.
   b. You did not follow through on the recommendations that I received from Vickie Castro regarding my quarterly goals on the Special Evaluation you initiated on 6/17/05.

3. While it appears that Ms. Zeitler was informed of your concerns about my units of service for fiscal year 2004-2005 upon her hire in July 2005, it appears that she was not informed at that time that you had problems with my performance in the areas of PURQC

completion. You, she, and I had a meeting to develop a plan to address the units of service issue on 8/2/05. During this meeting I offered to work at two school sites in attempt to prevent what happened last fiscal year when I did not receive the standard number of school referrals as projected. However, you declined this offer and PURQC completion was not mentioned as a potential problem during this meeting

4. Furthermore, it is unclear why Ms. Zeitler was not trained on all necessary PURQC paperwork immediately upon her hire so that a) she could be an even better resource for both Katie Raycroft, MSW and myself, and b) especially since you claimed that I did not attempt to turn in any PURQC paperwork for the entire 2004-2005 fiscal year. It does not make sense to me that Ms. Zeitler was trained on PURQC paperwork on 1/23/06 and 1/30/06 at the same time I was placed on a 3-month probationary status.

5. You alerted staff that you are expected to bill 5 hours per day and that you would need to inform the CYF Division Director and CEO of anyone who does not produce their projected unit production. However, you never alerted me to the possibility that a person could be placed on probation if my units did not meet this range given certain conditions beyond that individual's control. Considering that I have never had a full active caseload (due to a high number of case closings and continued problems with follow-through by school site staff), and this was brought to the attention of the CYF Division Director (Charlene Clemens) in 12/05, it is unclear why I did not received a warning at this meeting regarding possible probation. Furthermore, I thought this issue of my units not matching my FTE but rather my active caseload was resolved during our meeting with Tom Bekeny on 2/16/05, when you said a) that you would work on getting new cases to me and b) that I would be judged based on the number of cases that I had, not by FTE. If this was not the case, I should have been alerted to this prior to being placed on probation.

I request that you keep a copy of this memo, including all attachments, in my personnel file. I look forward to resolution of this issue, and it is my hope that FSA HR can address these concerns in a future meeting with Ms. Zeitler, Ms. Clemens, and myself.

**To:** All TLFP Staff and Interns

**From:** Charisse Lloyd, TLFP Program Manager

**Date:** February 7, 2007

**Subject:** February 6, 2007

For those of you who weren't able to make it, the following are some of the agenda items that were brought up. I have divided them into announcements, questions and concerns, decisions reached and follow-up. Please note that for the purpose of saving precious paper the minutes will be kept in a binder in my office and a copy will be placed on the corkboard in the chart room. TLFP staff members who are not present are responsible for making their own copies as needed. You will also find a copy of the agenda attached.

Present were CL, DF, MMc, CP, and MM, TA and RK.

### 1. **Announcements:**

- Charisse asked every one to make sure to update all RU numbers in the Circe system for all clients.

- <u>Princess Project -</u> It's that time of year for our girl clients attending the Prom or some special event. The Princess Project will provide each girl one dress of her choice and accessories. We are allowed to bring 5-20 girl clients, starting March 20-22nd of 2007 between the hours of 4:30-6:30pm. Please contact Chantal to set up appoints @ 415-288-5316, Please note: all clients have to be escorted by TLFP staff.

- <u>Billing and Progress Notes</u>

Charisse had a dead line for all billing slips to be turned in Wednesday 1/31/07. I did not receive all the billing until Monday 2/5/07 at 4:00. I just want people to know our units were late and we have to come up with a better plan on how to get all the billings in by the deadline.

- <u>Open Window</u>

The County has given everyone a mid - year opened window for all billings not submitted 7/1/06-12/31/06. If any one has late entry billing during this period please turn in all billing to Charisse by 2/23/2007, open window ends 2/28/07.

## 2. Questions and concerns raised:

- Filing progress notes, Charisse stated she could not help staff with filing their progress notes at this time, Megan stated she would be willing to help staff when she had available time.

- Staff feels over whelmed with all the progress notes being returned all at once.

- Megan brought up getting a temp person once a month to help staff with filing progress notes.

- Courtney brought up having an administrative day during SFUSD parent teacher conference week and or professional staff development day.

- Some staff acknowledged they were backed up and was not able to file all of their progress notes at this time

## 3. Follow-up:

- Debora agreed to follow-up with providing transportation for TLFP staff and client who are interested in going to the Princess Project.

## 4. Decisions reached:

Staff has agreed to have administrative day once a month with rotating days, starting Friday 2/16/2007 all day (9:00-5:00).
**Please Note:** all clients will be canceled.



**CITY AND COUNTY OF SAN FRANCISCO**
**DEPARTMENT OF PUBLIC HEALTH**

**Outpatient MH Billing Slip**
**Waivered**

Name:
BIS#: !
RU#: ¡ ........................
Program - RU# 382203
(Medical)

**Staff:** Therese Allen    **Staff#:** 9420    **Total Time:** 0:22    **Location:** 3 - Phone
**Service Date:** 1/3/2007

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:22    **# in Group:**

**Service Code:** HCPCS - H2015 - Collateral - BIS#311

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service
Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor,
San Francisco 94103. Billing enters these services into the billing information system.

The Provider submitting this claim certifies that the services provided are
supported by appropriate documentation and comply with applicable
Federal and State regulations.

**BIS Data Entry:**

**Signature**    **Date** 1/3/07    **Clerk's Initial** CR

MH BS 01B Note-012307-11287  - Printed on 2/5/2007



| CITY AND COUNTY OF SAN FRANCISCO<br>DEPARTMENT OF PUBLIC HEALTH<br><br>**Outpatient MH Billing Slip**<br>**Waivered** | **Name**<br>**BIS#:**<br>RU#: ˥ ͼ ̄ ̄ ̄ ̄...<br>Program - RU# 382203<br>(Medical) |
| --- | --- |

**Staff:** Therese Allen    **Staff#:**9420    **Total Time:** 2:30    **Location:** 1 - Office
**Service Date:** 1/3/2007

**CoStaff:**    **Co-Staff#:**    **Total Time:** 2:30    **# in Group:**

**Service Code:** HCPCS - H2015 - Assessment/Plan Dev - BIS#331

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor, San Francisco 94103. Billing enters these services into the billing information system.

| The Provider submitting this claim certifies that the services provided are supported by appropriate documentation and comply with applicable Federal and State regulations. | **BIS Data Entry:** |
| --- | --- |
| **Signature**       1/3/07    **Date** | **Clerk's Initial** |

MH BS 01B Note-013107-12055  - Printed on 1/31/2007

√f 2/5



**CITY AND COUNTY OF SAN FRANCISCO**
**DEPARTMENT OF PUBLIC HEALTH**

**Outpatient MH Billing Slip**
**Waivered**

Name
BIS#:
RU#:
Prog̶ ̶.. ̶ ̶ᴊᴊᴢᴢᴏᴅ
(School)

**Staff:** Mark Mazza    **Staff#:**9948    **Total Time:** 0:11    **Location:** 5 - School
**Service Date:** 12/5/2006

**CoStaff:    Co-Staff#:    Total Time:** 0:11    **# in Group:**

**Service Code:** HCPCS - H2015 - Assessment/Plan Dev - BIS#331

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service
Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor,
San Francisco 94103. Billing enters these services into the billing information system.

The Provider submitting this claim certifies that the services provided are
supported by appropriate documentation and comply with applicable
Federal and State regulations.

**BIS Data Entry:**

Signature                           Date

**Clerk's Initial**

MH BS OMB Note-010207-09735  - Printed on 1/2/2007

1-22-0 7



| | **CITY AND COUNTY OF SAN FRANCISCO** **DEPARTMENT OF PUBLIC HEALTH** **Outpatient MH Billing Slip** **Waivered** | **Name:** **BIS#:** **RU#:** Program - RU# 3822SD (School) |

**Staff:** Mark Mazza     **Staff#:**9948     **Total Time:** 0:07     **Location:** 5 - School
**Service Date:** 1/16/2007

**CoStaff:**     **Co-Staff#:**     **Total Time:** 0:07     **# in Group:**

**Service Code:** HCPCS - H2015 - Assessment/Plan Dev - BIS#331

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor, San Francisco 94103. Billing enters these services into the billing information system.

| The Provider submitting this claim certifies that the services provided are supported by appropriate documentation and comply with applicable Federal and State regulations. | **BIS Data Entry:** |
| **Signature**                                          **Date**  9/16/07 | **Clerk's Initial** |

MH BS 01B Note 012507-11617  - Printed on 1/25/2007

OK Ton 2/5/07



| CITY AND COUNTY OF SAN FRANCISCO<br>DEPARTMENT OF PUBLIC HEALTH<br><br>Outpatient MH Billing Slip<br>Waivered | Name:<br>BIS#: $<br>RU#: T ly<br>Progr 03<br>(Medical) |
|---|---|

**Staff:** Courtney Paden    **Staff#:**8662    **Total Time:** 0:53    **Location:** 1 - Office
**Service Date:** 1/11/2007

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:53    **# in Group:**

**Service Code:** Interactive - 90812 - 45-74 mins Individual Psychotherapy - BIS#573

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor, San Francisco 94103. Billing enters these services into the billing information system.

| The Provider submitting this claim certifies that the services provided are supported by appropriate documentation and comply with applicable Federal and State regulations.<br><br>Signature                                  Date    11/1/07 | BIS Data Entry:<br><br>CX<br>Clerk's Initial |
|---|---|

MH BS 01B Note-013007-11926  - Printed on 1/30/2007

OK  Tom  2/5/07



**CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF PUBLIC HEALTH**

**Children's MH AB3632 Billing Slip
Waivered**

Name: 
BIS#: 98
RU#: Tenderic
Program - RU# 382201

**Staff:** Courtney Paden    **Staff#:** 8662    **Total Time:** 0:52    **Location:** 1 - Office
**Service Date:** 1/18/2007

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:52    **# in Group:**

**Service Code:** CPT - 90806 - 45-74 mins Individual Psychotherapy - BIS#644

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service
Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor,
San Francisco 94103. Billing enters these services into the billing information system.

The Provider submitting this claim certifies that the services provided are
supported by appropriate documentation and comply with applicable
Federal and State regulations.

**Signature**                                    **Date** 1/18/07

**BIS Data Entry:**

**Clerk's Initial**

MH BS 06 Note-020307-12424  - Printed on 2/2/2007

IF  2/2



### CITY AND COUNTY OF SAN FRANCISCO
### DEPARTMENT OF PUBLIC HEALTH

**Children's MH AB3632 Billing Slip**
**Waivered**

Name:
BIS#: !
RU#: 1                    lily
Program - RU# 382201

---

**Staff:** Kathryn Raycroft    **Staff#:** 7456    **Total Time:** 0:10    **Location:** 3 - Phone
**Service Date:** 1/8/2007

---

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:10    **# in Group:**

---

**Service Code:** HCPCS - H2015 - Assessment/Plan Dev - BIS#332

---

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

---

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor, San Francisco 94103. Billing enters these services into the billing information system.

---

The Provider submitting this claim certifies that the services provided are supported by appropriate documentation and comply with applicable Federal and State regulations.

**Signature**    **Date** 1/8/07

**BIS Data Entry:**

**Clerk's Initial**

MH BS 06 Note-011807-10954 - Printed on 1/18/2007

OK Tom        1/22/07



| | CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH<br><br>Children's MH AB3632 Billing Slip<br>Waivered | Name<br>BIS#:<br>RU#:<br>Program - RU# 382201 |
|---|---|---|

**Staff:** Kathryn Raycroft    **Staff#:** 7456    **Total Time:** 0:20    **Location:** 3 - Phone
**Service Date:** 1/8/2007

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:20    **# in Group:**

**Service Code:** HCPCS - H2015 - Collateral - BIS#312

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor, San Francisco 94103. Billing enters these services into the billing information system.

| The Provider submitting this claim certifies that the services provided are supported by appropriate documentation and comply with applicable Federal and State regulations.<br><br>*Kathryn Raycroft*                    1/8/07<br>**Signature**                                  **Date** | **BIS Data Entry:**<br><br>*CL*<br>**Clerk's Initial** |
|---|---|

MH BS 06 Note-011607-10678  - Printed on 1/16/2007

OK Tom    1/23/07



**CITY AND COUNTY OF SAN FRANCISCO**
**DEPARTMENT OF PUBLIC HEALTH**

**Children's MH AB3632 Billing Slip**
**Waivered**

Name:
BIS#: !
RU#: ‾
Progı

**Staff:** Rebekah Kao    **Staff#:**9947    **Total Time:** 0:17    **Location:** 5 - School
**Service Date:** 1/3/2007

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:17    **# in Group:**    ₽₭

**Service Code:** HCPCS - H2015 - Collateral - BIS#3₁2 3₁₁

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service
Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor,
San Francisco 94103. Billing enters these services into the billing information system.

The Provider submitting this claim certifies that the services provided are
supported by appropriate documentation and comply with applicable
Federal and State regulations.

**Signature** _Rebekah Kao, MFTI_    **Date** 1/30/07

**BIS Data Entry:**

_CK_
**Clerk's Initial**

MH BS 06 Note-013107-11972 - Printed on 1/30/2007

DF 2/2



**CITY AND COUNTY OF SAN FRANCISCO**
**DEPARTMENT OF PUBLIC HEALTH**

**Children's MH AB3632 Billing Slip**
**Waivered**

Name                          √
BIS#:
RU#:
Progi

---

**Staff:** Rebekah Kao    **Staff#:**9947    **Total Time:** 0:54    **Location:** 1 - Office
**Service Date:** 1/5/2007

---

**CoStaff:**    **Co-Staff#:**    **Total Time:** 0:54    **# in Group:**    RK

---

**Service Code:** HCPCS - H2015 - Collateral - BIS#312 311

---

**Service Strategy 1:**
**Service Strategy 2:**
**Service Strategy 3:**

---

**Service Procedure Code not specified above:**
Write in the CPT/HCPCS Code and a description of the service provided, actual face-to-face time and Total Service Duration. Submit a copy of the completed billing slip and client chart note to: CBHS Billing, 1380 Howard St., 3rd Floor, San Francisco 94103. Billing enters these services into the billing information system.

---

The Provider submitting this claim certifies that the services provided are supported by appropriate documentation and comply with applicable Federal and State regulations.

_Rebekah Kao_, MFTI              1/30/07

**Signature**                          **Date**

**BIS Data Entry:**

_CY_

**Clerk's Initial**

MH BS 06 Note-013007-11961  - Printed on 1/30/2007

OK Tom 2/5/07

## Under Lion Family Program Monthly Units Of Service
### November- 2006

#### 3822O1

| Name | Staff ID# | General Units | MAA Units | Med Units | Late MAA Billing | Total Units in Hours | | |
|---|---|---|---|---|---|---|---|---|
| Allen, T | 9420 | 2,204 | 1,320 | | | 3,524 | | |
| Fletcher,D | 10225 | | 180 | | | 180 | | |
| Kao, R | 9947 | 3,467 | 720 | | | 4,187 | | |
| Lloyd, C | 5212 | 0 | | | | 0 | | |
| Mazza, M | 9948 | 677 | 1,710 | | | 2,387 | | |
| McKellogg, M | 9306 | 708 | 1,080 | | | 1,788 | | |
| Paden, C | 8662 | 1,145 | | | | 1,145 | | |
| Raycroft, K | 7456 | 1,135 | | | | 1,135 | | |
| Sherin, A | 9686 | | 2,805 | | | 2,805 | | |
| Bekeny, T | 7609 | 0 | | | | 0 | | |
| Schulkin, S | 10192 | 0 | | | | 0 | | |
| Bassett, T | 9974 | 377 | 120 | | | 497 | | |
| Brumder, T | 9975 | 313 | | | | 313 | | |
| Poelke, G | 9976 | | 120 | | | 120 | | |
| Weintrob, C | 9977 | 0 | | | | 0 | | |
| **Totals** | | 10,026 | 8,055 | | | 18,081 | | |

#### 3822O3

| Name | Staff ID# | General Units | MAA Units | Med Units | Late MAA Billing | Total Units in Hours | | |
|---|---|---|---|---|---|---|---|---|
| Allen, T | 9420 | 2,531 | | | | 2,531 | | |
| Fletcher, D | 10225 | 0 | | | | 0 | | |
| Kao, R | 9947 | 2,278 | | | | 2,278 | | |
| Lloyd, C | 5212 | 0 | | | | 0 | | |
| Mazza, M | 9948 | 512 | | | | 512 | | |
| McKellogg, M | 9306 | 292 | | | | 292 | | |
| Paden, C | 8662 | 373 | | | | 373 | | |
| Raycroft, K | 7456 | 155 | | | | 155 | | |
| Sherin, A | 9686 | 4,360 | | | | 4,360 | | |
| Bekeny, T | 7609 | 0 | | | | 0 | | |
| Schulkin, S | 10192 | 0 | | | | 0 | | |
| Bassett, T | 9974 | 141 | | | | 141 | | |
| Brumder, T | 9975 | 330 | | | | 330 | | |
| Poelke, G | 9976 | 0 | | | | 0 | | |
| Weintrob, C | 9977 | 121 | | | | 121 | | |
| **Totals** | | 11,093 | | | | 11,093 | | |

#### 3822SD

| Name | Staff ID# | General Units | MAA Units | Med Units | Late MAA Billing | Total Units in Hours | | |
|---|---|---|---|---|---|---|---|---|
| Allen, T | 9420 | 0 | | | | 0 | | |
| Fletcher, D | 10225 | 0 | | | | 0 | | |
| Kao, R | 9947 | 521 | | | | 521 | | |
| Lloyd, C | 5212 | 0 | | | | 0 | | |
| Mazza, M | 9948 | 1,040 | | | | 1,040 | | |
| McKellogg, M | 9306 | 0 | | | | 0 | | |
| Paden, C | 8662 | 0 | | | | 0 | | |
| Raycroft, K | 7456 | 1,040 | | | | 1,040 | | |
| Sherin, A | 9686 | 0 | | | | 0 | | |
| Bekeny, T | 7609 | 0 | | | | 0 | | |
| Schulkin, S | 10192 | 0 | | | | 0 | | |
| Bassett, T | 9974 | 0 | | | | 0 | | |
| Brumder, T | 9975 | 0 | | | | 0 | | |
| Poelke, G | 9976 | 0 | | | | 0 | | |
| Weintrob, C | 9977 | 456 | | | | 456 | | |
| **Totals** | | 3,057 | | | | 3,057 | | |

Please Note: A.Sherin had 3 months (August, Sept.and Oct.) worth of Late Billing, that was added to the first week of Nov. billing 2006. Page 1



## CONFIDENTIAL

**MEMORANDUM TO:**     Courtney Paden
                                    Staff Therapist

**FROM:**                  Debora Fletcher
                                    Program Director
                                    Tender Lion Family Program

**DATE:**                    February 5, 2007

**SUBJECT:**            **<u>Written Warning/Probation</u>**

This memo is in follow-up to my Written Warning memo of January 11, 2007 regarding your chart documentation (copy of memo attached). At that time, you were directed to bring all chart documentation up-to-date by 5pm, Thursday, February 1, 2007, and that failure to do so would result in disciplinary action up to and including termination. I have done a thorough review of your charts and although you have made some press, you continue to be behind (see attached listing of findings from my chart review). Please review these findings and inform me of any information you feel is inaccurate by 5pm, February 5, 2007.

Since you have not brought your charting paperwork up to date, you are being placed on a 30-day probation status effective today, February 5, 2007. You will be expected to bring all of your paperwork up to date by 5:00pm, Thursday, March 15, 2007. Failure to do so will result in further disciplinary action, up to and including termination.

_____

Courtney Paden                          Date

*Debora Fletcher*               2-5-07

Debora Fletcher                       Date

Attachment             *Courtney Paden refuses to sign.*

Cc: Charlene Clemens
       Personnel File

Review of Courtney Paden's Client Charts – 2/2/07

S

    Transferred to CP on 10/20/06.
    No paperwork in chart since that time.

S         – AB3632
    Plan of Care dated 6-07-05 (none for 2006)
    Progress Notes Now includes notes 9/12/06-1-30-07.
    Progress notes are to be done on the CIRCE system as of 12/05/06.  Notes are not
    On CIRCE until 1/2/07

D

    Opened 1-11-07
    Assigned to CP on 1/17/07

J       – AB3632
    Opened 10/10/01
    No Plan of Care for 2006 (last POC dated 9/19/05)
    Progress Notes – None since 6/28/06

I       – AB 3632
    Opened 4/13/04
    Progress Notes – None since 11/29/06

N    – AB 3632
    Opened 10/19/01
    Plan of Care 9/28/05
    Progress Notes – None since 6/26/06

L

    Opened 10/21/05
    Progress Notes – None since 6/23/06

E

    Opened 10/12/06
    Assigned to CP on 10/12/06
    No Plan of Care
    Progress Notes – None since 11/27/06

F     – AB3632
    Opened 10/26/01
    Plan of Care – 11/15/05 by Larry Lariosa.  No current Plan of Care.
    Progress Notes – now up-to-date

A          – AB3632
           Opened 2/09/05
           Progress Notes – None since 11/29/06

D
           Opened 1-27-06
           Progress Notes – last one 1/11/07

A          – AB3632
           Opened 10-31-06
           Assigned to CP 12/01/06.  Paperwork not completed to put under CP's caseload.
           No Plan of Care
           Progress Notes – none since 11-10-06

S          – AB3632
           Opened 11-19-02
           Plan of Care 11-22-05.  No current Plan of Care.
           Progress Notes – none since 11-21-06

J.
           Chart filed in closed charts filing cabinet, but not closing materials, including
           Closing Summary, CES, closing progress note in chart.
           Client was transferred to Westside on 11-02-06

M.
           Assigned to CP on 1-03-07
           Progress Notes – none



## **CONFIDENTIAL**

**MEMORANDUM TO:**    Courtney Paden
                             Staff Therapist

**FROM:**                Debora Fletcher
                             Program Director
                             Tender Lion Family Program

**DATE:**                February 5, 2007

**SUBJECT:**        **Written Warning/Probation**

This memo is in follow-up to my Written Warning memo of January 11, 2007 regarding your chart documentation (copy of memo attached). At that time, you were directed to bring all chart documentation up-to-date by 5pm, Thursday, February 1, 2007, and that failure to do so would result in disciplinary action up to and including termination. I have done a thorough review of your charts and although you have made some progress, you continue to be behind (see attached listing of findings from my chart review). Please review these findings and inform me of any information you feel is inaccurate by 5pm, February 5, 2007.

Since you have not brought your charting paperwork up to date, you are being placed on a 30-day probation status effective today, February 5, 2007. You will be expected to bring all of your paperwork up to date by 5:00pm, Thursday, March 15, 2007. Failure to do so will result in further disciplinary action, up to and including termination.

_____
Courtney Paden

_____
Debora Fletcher

Attachment

Cc: Charlene Clemens
     Personnel File

_____
Date

_2-5-07_
Date

_Courtney Paden refuses to sign._

⸱ **Courtney Paden**

| | |
|---|---|
| **From:** | Vickie Castro [vcastro@fsasf.org] |
| **Sent:** | Monday, March 12, 2007 11:54 AM |
| **To:** | clloyd@fsasf.org; mmazza@fsasf.org; mmckellogg@fsasf.org; cpaden@fsasf.org; kraycroft@fsasf.org |
| **Cc:** | dfletcher@fsasf.org; cclemens@fsasf.org |
| **Subject:** | Summary of Response to Group Issues - 3/1/07 |

I am providing a summary of the issues that were addressed from the group on 2/8/07. The response meeting was held on March 1, 2007 at 1:30pm with Mark Mazza, Megan McKellogg, and Courtney Paden from staff in attendance. Also in attendance was Deb Fletcher, Program Director, Charlene Clemens, Division Director and myself.

The issues presented and responses discussed were as follows: Program Director's forgetfulness, hiring of clinical supervisor without staff input, Tom Bekeney, lack or respect in program, timely assignment of intakes, practices surrounding billing and notes, moving the Tender Lion Program, going to schools outside of area, Tender Lion Program reputation, and PURC committee.

The group was presented responses to these issues and were able to openly discuss any further concerns. Many of these issues have been resolved, and some are in the process of being resolved. Others will be part of an overall strategic plan that will be presented by the Tender Lion Program management.

This closes out this matter. Any further issues or concerns should be brought to the Program Director's attention. As Tender Lion is now reporting to a new Division Director, Carole McKindley-Alvarez, matters that staff feel are not resolved after bringing to your Program Director, should be brought to Carole's attention. As always, Human Resources is here to assist in any future issues that are not resolved after following the agency's conflict resolution process.

Thank you.

Vickie Castro
Director of Human Resources
Family Service Agency of San Francisco
1010 Gough Street
San Francisco, CA 94109
Phone: (415) 474-7310 ext. 450
Fax: (415) 931-3773
vcastro@fsasf.org

1



Good morning Ms. Carole,

I'm sending you this email to update you on the meeting I had with Courtney Paden, on Monday April 23, 2007. Some of the issues and concerns raised by Ms. Paden I could not answer because of my position, but I do feel Ms. Paden deserves the opportunity to have answers to her concerns, by scheduling another meeting with myself and the operetta upper Management.

## A Few Issues and Concerns raised

- Written warning and probation – Courtney Paden, Charisse Lloyd
- Lack of Communication- Between staff and Program Director
- Clarifications – Policy and Procedures

Charisse L



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION



April 26, 2007

Courtney Paden
1529 Florida Ave.
Richmond, California 94804

Dear Ms Courtney Paden,

Thank you for contacting us on 04/26/2007 11:59 AM. Based on the information you provided, it appears your situation may be covered by the laws we enforce. To begin the charge-filing process, please read and complete the entire questionnaire immediately. You may return the questionnaire by mail to the EEOC office listed below or you may return the questionnaire in person. If you wish to return the completed questionnaire in person, we strongly encourage you to call the office at the number indicated below before visiting. The charge filing process can take up to two hours to complete and the intake office hours and procedures differ from office to office.

San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105-1260
1-866-408-8075 or 1-415-625-5602

Please remember to:
- Answer all questions as completely as possible.
- Include the location where you work(ed) or applied.
- Complete both sides of each page.
- Attach additional pages to complete your responses, if necessary.
- Contact the field office if you have questions about completing this
  form or if you wish to inquire about visiting the office to complete the charge filing process.

Information about the laws we enforce and our charge-filing procedures is available on our web site at www.eeoc.gov.

A charge of job discrimination must be filed with the EEOC within 180 days from the date of harm in order to protect your rights. This 180 day filing deadline may be extended to 300 days if the charge is also covered by a state or local job discrimination law. Therefore, it is important that you submit the completed questionnaire promptly.

Generally, submission of this questionnaire will not meet all requirements for filing a charge. However, this questionnaire will allow the EEOC to review your circumstances further and determine whether we can assist you.

Please call 1-800-669-4000 and provide the transaction number 070426-000983, if you have not heard from the field office after 30 days from the date you mailed the completed questionnaire.

Sincerely,

U.S. Equal Employment Opportunity Commission

* PLEASE do NOT return the questionnaire to the address on the envelope; return it to the address above *

K



Changing Lives

Family Service Agency
of San Francisco

*Enterprise Division*

## REQUEST FOR LEAVE

| Name: | Date: |
|---|---|
| Courtney Paden | 5/24/07 |
| Division: | Program: |
| Senior Division | TLFP |

**I am requesting the following leave time:**

| | Dates | Comments |
|---|---|---|
| **Annual Leave** | | |
| **Medical/Sick Leave** | 6/1, 6/4, 6/5, 6/6 | |
| **Personal Business Leave** | | |
| **Other** | | |

Recommended by: _Debora Fletcher_                                    Date: 5-24-07
                    **Director/Supervisor**

Approved by: _____                    Date: _____
                    **Division Manager**

Note:    All Leaves should be pre-approved, including medical/dental appointments.
         Employees on Sick Leave should notify the Supervisor/Division Manager.
         Excessive use of Sick Leave is a proper matter for inquiry by the employee's supervisor as per PPM.

Rev. 8/12/02
/aio

*1255 Post Street-Suite #600, San Francisco, CA 94109 . Telephone: (415) 474-7310 . Fax: (415) 775-7327*



## CONFIDENTIAL

**MEMORANDUM TO:**    Courtney Paden
Staff Therapist
Tender Lion Family Program

**FROM:**    Carole McKindley-Alvarez
Division Director

**DATE:**    May 31, 2007

**SUBJECT:**    <u>**Termination Letter**</u>

This letter is to inform you that your employment with our agency is being terminated effective today, May 31, 2007.   As you know, our agency has an at-will employment policy, and we are exercising our right to terminate at this time.  However, there have been serious factors that have contributed to this decision.  One has been a continuing issue with low productivity surrounding your inability to maintain the billing requirements of your position.  The other factor has been your continued behavior of challenging and disregarding your manager's directives.  This behavior is against agency policy, is unacceptable and will not be tolerated.  Again, these issues have been contributing factors surrounding this decision.

Your final pay will be given to you today and will include your pay from May 21, 2007 through today. It will also include any accrued but unused annual leave and PBL.   Your benefits will continue through June 15, 2007.  You will receive information mailed to your home address on how you can continue your benefits through COBRA.

If you wish to discuss this matter, you may contact the HR Director, Vickie Castro, at (415) 474-7310 or the CEO, Bob Bennett at (415) 474-7310 x 313.


Acknowledged: _____    Date: _____
Courtney Paden



CC:    Bob Bennett, CEO
Vickie Castro, HR Director

**To:** Vickie Castro, FSA Human Resources
**From:** Courtney Paden, TLFP Social Worker/Therapist
**Cc:**   Charisse Lloyd, TLFP Program Manager
          Audrey Dunn, LCSW, TLFP Adjunct Clinical Supervisor
          Carol McKindley-Alaverez, FSA Senior Division Director
          Bob Bennett, FSA CEO
**Date:** 5/31/07
**Re:** At will termination

Let me apologize in advance if this letter contains any spelling errors and grammatical mistakes because I am still in shock from learning about my abrupt termination. I am writing this letter tonight because I will have oral surgery tomorrow afternoon and I probably will be too incapacitated to respond coherently at a later time.

With that being said, the purpose of this letter is to ask that you reconsider allowing me to terminate with my clients. I work with extremely vulnerable children and their families. Some of the transfer cases that I received in March had just started to process and accept the loss of their previous therapist Katie Raycroft and certainly don't deserve to experience an abrupt termination a few months later. I feel horrible because your decision is forcing me to behave in an unethical manner that I feel will exacerbate the stress that many of my clients already experience. In addition, I feel my clients are being unfairly treated because all other TLFP employees who have terminated (or rather were allowed to resign) from their positions were given the opportunity at having an appropriate professional termination process with their clients. According to your letter I do not pose an immediate threat to clients or other staff (including management) and therefore I am not sure why a decision was made prematurely. The decision to terminate me did not have to negatively impact my clients at least not in this way.

I can't say that I am surprised by this decision to terminate me at will but I am shocked at the timing because it is absolutely unnecessary to have done this before the end of the fiscal year. You know based on analysis of our unit production that most clients go inactive once school gets out (school ends 6/12/07). Therefore with just a week or even one or two days I could have incorporated an explanation about my needing to leave TLFP into an appropriate termination response that would not have caused harm to the agency or clients. Having someone else inform my clients of my termination is cruel. I feel this type of termination will lead to unnecessary gossip about my termination as well potential feelings of rejection as clients may feel my abrupt departure without a goodbye has something to do with their presenting problems. Carol said that I will look back on this experience and feel relief based from leaving based on my dissatisfaction with the work environment. However no clinician in their right mind could ever feel relief (or any other positive emotion) from not being given a chance to say goodbye to their clients.

Please note that I am not asking to get paid I am asking to honor my ethical obligation to appropriate termination with regards to clients and documentation of services. I am very capable of participating in a professional termination via the phone or face to face which ever you prefer (perhaps Adrienne or Audrey could serve as a witness). I know that you

1

stated that you took my clients into consideration but I strongly disagree. My sick leave was requested and approved by my immediate supervisor Debora Fletcher on 5/24/07. I was allowed to meet with clients all this week and inform them that I would return on Thursday 6/7/07 following my recovery needed after surgery. I was even allowed to see clients today before a meeting at 3:50pm where I was informed about my termination. It is not hard for me to accept my at will termination rather it is hard to accept that I won't be able to say goodbye in a professional manner and complete required documentation when other employees who posed more of a threat to the agency were allowed to do so within this fiscal year.

Any decision including at will termination can be changed. Regardless of how you personally feel about me please reconsider giving me the option of engaging in a professional termination with my clients.

(2 pages)
plus 2 pages
enclosures

**To:** Carol McKindley-Alvarez, FSA Senior Division Director
**From:** Courtney Paden, ASW CP
**Cc:**   Charisse Lloyd, TLFP Program Manager
        Audrey Dunn, LCSW, TLFP Adjunct Clinical Supervisor
        Debora Fletcher, TLFP Program Director
        Vickie Castro, FSA Human Resources Director
        Bob Bennet, FSA CEO
        Miriam Damon, CBHS TLFP Program Monitor
        Josephine McCreary, Performance & Compliance Director
        Sai-Ling Chan-Sew, CBHS Children, Youth and Families Director
**Date:** 6/6/07
**Re:** Reinstating my position and/or allowing for termination with clients

I am writing this letter to **1)** request that you respond to my original request to reinstate
my position as a TLFP Social Worker/Staff Therapist **2)** to inquire why I am being
treated differently than all other TLFP employees and **3)** to request that you work to
amend the FSA Personnel Practices policy that would permit any employee who provides
mental health services to clients to be terminated at will.

### 1) To request that you respond to my original request to reinstate my position as a TLFP Social Worker/Staff Therapist:

After learning that I was terminated at will I wrote a response to Vickie, you, Charisse,
Audrey and Bob (see memo dated 5/31/07). I delivered this memo to the agency on
6/1/07 but I have not heard a response from any of you. It is imperative that this issue be
resolved in a timely manner. I simply want to be able to provide the services that the
clients had expected to receive from me. It is my hope that you will reinstate my position
at TLFP since I have not engaged in behavior that would warrant immediate termination
without time for client termination. It is my understanding that you have a right to
terminate at will (with or without cause) however this does not preclude adhering to
established compliance standards for client care. It is my hope that by sending copies of
this memo to other regulatory supervisors within CBHS that this will expedite a response
from you as the clients who I serve were expecting my return on 6/7/07.

### 2) Inquire why my clients and I are being treated differently than all other TLFP employees and their clients:

Since Debora Fletcher became the TLFP Program Director five TLFP Staff Therapist
have left within this fiscal year and all of these clinicians were given time to terminate
with their clients. Neither you nor the previous Division Director (Charlene Clemens)
terminated these employees even though some engaged in behavior that could have
warranted immediate at will termination. For example, the clinician who left around
7/31/06 was allowed to maintain several charts which had no progress notes. Last fall the
agency lost a lot of money during county and state audits in part due to non-
documentation of services. However, another clinician who left around 3/30/07 had
several charts with no progress notes but she was allowed (and paid) to terminate with

her clients for a month and a half. In addition, she was even given an extension when she could not finish her paperwork within the specified timeframe on her resignation letter. You. Carol, were the new Division Director for TLFP (as of 3/2/07) and you approved this extension. The last clinician who departed around 4/13/07 told her clients that she accepted another job and mistakenly informed them that they could come with her or stay at TLFP. She announced this seemingly conflict of interest during a TLFP Clinical Meeting however she was not terminated at will and it turned out that her new job didn't accept her AB3632 clients.

You met with me as recently as 5/10/07. During this meeting you gave me a list of things that you wanted me to do until the end of the fiscal year and you agreed to follow up on concerns that I raised within one week. Although I did not get any response in a week or two I did everything I agreed to do (including meeting with Audrey, waiting to hear a response from HR, requesting and receiving approval for sick leave, waiting to move the rest of my possessions into the other room, recruiting for groups and formally meeting with Debora). Yet, while I was doing everything that was asked of me to facilitate a better working relationship within TLFP you chose to terminate me in this cavalier and highly unprofessional manner. This most certainly doesn't fall under the spirit of "*keeping it real*" which you proclaim to foster.

As your senior clinician, if you absolutely feel that my position does not merit being reinstated indefinitely then at the least I should be temporarily reinstated to provide my clients with a proper termination prior to case transfer. Further, you should pay me as you did all other TLFP clinicians. However, as I stated in my original request (see memo dated 5/31/07) in the interest of my clients I am willing to terminate without pay/benefits because I take my role as a therapist seriously and their mental health comes first.

***3) To request that you work to amend the FSA Personnel Practices general policy that would permit any employee who provides mental health services to clients to be terminated at will:***

I understand and agree with the necessity of any organization needing to have a at will termination policy. However, I am very concerned that Family Service Agency of San Francisco seems to have no separate clause for how you will implement at will termination for line staff. The therapeutic relationship between client and therapist/case manager is so delicate that measures need to be in place to ensure that this relationship is ended abruptly only in extreme circumstances of gross ethical misconduct. For example, at will termination is warranted for a therapist who engages in physical or sexual abuse of a client or a colleague. Consistent low productivity and justified challenges to management are issues that the agency may use a grounds to terminate employment but certainly not a reason to justify immediate at will termination. It is my hope that you will work to develop a policy for implementing at will termination with a clause for allowing for termination when an employee is providing mental health services and poses no immediate threat to clients or colleagues.

**Enclosure:** Memo re: At will termination, dated 5/31/07

**To:** Vickie Castro, FSA Human Resources
**From:** Courtney Paden, TLFP Social Worker/Therapist
**Cc:**    Charisse Lloyd, TLFP Program Manager
Audrey Dunn, LCSW, TLFP Adjunct Clinical Supervisor
Carol McKindley-Alaverez, FSA Senior Division Director
Bob Bennett, FSA CEO
**Date:** 5/31/07
**Re:** At will termination

Let me apologize in advance if this letter contains any spelling errors and grammatical mistakes because I am still in shock from learning about my abrupt termination. I am writing this letter tonight because I will have oral surgery tomorrow afternoon and I probably will be too incapacitated to respond coherently at a later time.

With that being said, the purpose of this letter is to ask that you reconsider allowing me to terminate with my clients. I work with extremely vulnerable children and their families. Some of the transfer cases that I received in March had just started to process and accept the loss of their previous therapist Katie Raycroft and certainly don't deserve to experience an abrupt termination a few months later. I feel horrible because your decision is forcing me to behave in an unethical manner that I feel will exacerbate the stress that many of my clients already experience. In addition, I feel my clients are being unfairly treated because all other TLFP employees who have terminated (or rather were allowed to resign) from their positions were given the opportunity at having an appropriate professional termination process with their clients. According to your letter I do not pose an immediate threat to clients or other staff (including management) and therefore I am not sure why a decision was made prematurely. The decision to terminate me did not have to negatively impact my clients at least not in this way.

I can't say that I am surprised by this decision to terminate me at will but I am shocked at the timing because it is absolutely unnecessary to have done this before the end of the fiscal year. You know based on analysis of our unit production that most clients go inactive once school gets out (school ends 6/12/07). Therefore with just a week or even one or two days I could have incorporated an explanation about my needing to leave TLFP into an appropriate termination response that would not have caused harm to the agency or clients. Having someone else inform my clients of my termination is cruel. I feel this type of termination will lead to unnecessary gossip about my termination as well potential feelings of rejection as clients may feel my abrupt departure without a goodbye has something to do with their presenting problems. Carol said that I will look back on this experience and feel relief based from leaving based on my dissatisfaction with the work environment. However no clinician in their right mind could ever feel relief (or any other positive emotion) from not being given a chance to say goodbye to their clients.

Please note that I am not asking to get paid I am asking to honor my ethical obligation to appropriate termination with regards to clients and documentation of services. I am very capable of participating in a professional termination via the phone or face to face which ever you prefer (perhaps Adrienne or Audrey could serve as a witness). I know that you

1

stated that you took my clients into consideration but I strongly disagree. My sick leave was requested and approved by my immediate supervisor Debora Fletcher on 5/24/07. I was allowed to meet with clients all this week and inform them that I would return on Thursday 6/7/07 following my recovery needed after surgery. I was even allowed to see clients today before a meeting at 3:50pm where I was informed about my termination. It is not hard for me to accept my at will termination rather it is hard to accept that I won't be able to say goodbye in a professional manner and complete required documentation when other employees who posed more of a threat to the agency were allowed to do so within this fiscal year.

Any decision including at will termination can be changed. Regardless of how you personally feel about me please reconsider giving me the option of engaging in a professional termination with my clients.

2

RECEIVED JAN 22 2007

To:    Debora Fletcher
        Program Director

From:  Katie Raycroft
        Staff Therapist/Social Worker

Cc:    Vickie Castro
        Director of Human Resources

Re:    Resignation Letter

Date:  January 22, 2007

Dear Ms. Fletcher:

The purpose of this letter is to inform you that I will be resigning from my position as Staff Therapist/Social Worker at Tender Lion Family Program and will be leaving Family Service Agency of San Francisco on March 16, 2007. During the next two months my focus will be on terminating with clients/families, transferring or closing cases, and organizing charts. I would like to ask that I not be required to attend meetings and/or trainings unless they directly impact my work with my clients.

After meeting with you on Friday, January 19th, I have decided to take this time to evaluate my current career goals and consider new opportunities, ones in which I can feel supported and appreciated in my work.

Sincerely,

*Katie Raycroft, ASW*
Katie Raycroft, ASW



RECEIVED MAR 14 2007

March 14, 2007

To:     Debora Fletcher, Program Director
CC:    Carole McKindley-Alvarez, Division Director
         Vickie Castro, Director of Human Resources

From:  Katie Raycroft, Staff Therapist/Social Worker

Ms. Fletcher,

The purpose of this letter is to request an extension in my resignation from Tender Lion
Family Program to Friday, March 30th. Due to unforeseen circumstances, the termination
process with clients and families took longer than anticipated, as I had my final session
yesterday evening. Therefore I am asking for additional time to complete documentation,
transferring of clients, closing paperwork, and chart organization. Thank you.

Sincerely,

*Katie Raycroft, ASW*

Katie Raycroft, ASW
Staff Therapist/Social Worker

**Courtney Paden**

| | |
|---|---|
| **From:** | Vickie Castro [vcastro@fsasf.org] |
| **int:** | Friday, April 20, 2007 12:05 PM |
| **.o:** | cpaden@fsasf.org |
| **Subject:** | Dental Insurance |

| | |
|---|---|
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Hi Courtney:
I just heard back from our insurance broker who has been researching your
dental insurance problem.  Apparently, Delta had a wrong social security
number for you, and that is why your dentist could never find any record.
You were always in the system, however, your social security number was
incorrect.  The problem has now been corrected and you should not have any
problems moving forward.

I apologize for any inconvenience this has caused you, and your dental
office.

Thank you.

Vickie Castro
Director of Human Resources
Family Service Agency of San Francisco
1010 Gough Street
San Francisco, CA 94109
Phone: (415) 474-7310 ext. 450
Fax: (415) 931-3773
·castro@fsasf.org